UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| DAVID BRUMMETT,<br><br>                Petitioner,<br><br>   v.<br><br>BRIAN FINN,<br><br>                Respondent. | Case No. 1:15-cv-00368-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court is a Petition for Writ of Habeas Corpus filed by former Idaho state prisoner David Brummett ("Petitioner" or "Brummett"), challenging his Canyon County conviction of possession of a controlled substance. (Dkt. 3.) On August 3, 2016, the Court dismissed Claim 1 and the related portion of Claim 3[1] as noncognizable, pursuant to the doctrine of *Stone v. Powell*, 428 U.S. 465 (1976). (Dkt. 24.) The remaining claims in the Petition—Claim 2 and the related portion of Claim 3—are now fully briefed and ripe for adjudication on the merits. (Dkt. 25, 26.) The Court takes judicial notice of the records from Petitioner's state court proceedings, which have been lodged by Respondent. (Dkt. 10.) *See* Fed. R. Evid. 201(b); *Dawson v. Mahoney*, 451 F.3d 550, 551 n.1 (9th Cir. 2006).

---

[1]     Claim 3 is not an independent basis for relief, but rather restates Claims 1 and 2. Therefore, the Court considered Claim 1, and the related portion of Claim 3, together. (Dkt. 24.) The Court will do the same with the remaining claims and consider Claim 2, and the related portion of Claim 3, together.

**MEMORANDUM DECISION AND ORDER - 1**

All parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (Dkt. 17.) Having carefully reviewed the record in this matter, including the state court record, the Court concludes that oral argument is unnecessary. *See* D. Idaho L. Civ. R. 7.1(d). Accordingly, the Court enters the following Order denying the remaining claims in the Petition.

## BACKGROUND

The following facts, which Petitioner does not dispute, are taken from the decision of the Idaho Court of Appeals during Petitioner's post-conviction proceedings:

> A Nampa City police officer observed Brummett walking on railroad tracks, which were separated by a chain-link fence topped with barbed wire and marked with a no trespassing sign. The officer called for Brummett to come over to talk to him. Brummett, who was wearing headphones, appeared not to hear the officer at first, but after repeated efforts of yelling at Brummett, Brummett approached the officer on the other side of the fence. The officer informed Brummett that he was trespassing and instructed him to walk toward an overpass and climb over the fence. Brummett replied that he was not going to follow the officer's instruction because he was not traveling in that direction. At that point, the officer advised Brummett that he was not free to leave.
>
> After repeated requests, Brummett agreed to walk to the overpass. However, as he was doing so, Brummett stopped on the railroad tracks, put his backpack down, and put his headphones on. The officer advised Brummett to keep walking toward the overpass, but Brummett ignored him. This caused the officer to call for backup and to scale the fence to reach Brummett. As the officer climbed the fence, Brummett started running away from the officer. A train was moving at a slow pace, and Brummett climbed through the middle of two cars. The officer continued to pursue Brummett

**MEMORANDUM DECISION AND ORDER - 2**

> as he ran, and the train stopped in time for the officer to climb through the same location of the two railroad cars. As Brummett was running, he tripped on a curb, but then stood up and faced the officer as the officer was running toward him. The officer twice advised Brummett to get on the ground, but Brummett refused to follow the officer's instruction. The officer tackled Brummett to the ground and placed him in handcuffs.
>
> The officer then searched Brummett and found a green leafy substance in his pants pocket and a hypodermic needle and spoon with a white crystal residue on it in his jacket pocket. After the officer advised Brummett of his *Miranda* rights, Brummett told the officer that the green leafy substance was marijuana and that the white crystal substance was methamphetamine. He also told the officer that he bought the marijuana the night before and that he used the methamphetamine earlier that morning by using the hypodermic needle to inject it into his person.
>
> The State charged Brummett with felony possession of a controlled substance, Idaho Code § 37–2732(c)(1), and four misdemeanors: possession of a controlled substance, I.C. § 372732(c)(3); possession of paraphernalia, I.C. § 37–2734A(1); trespassing, I.C. § 18–7008; and resisting or obstructing officers, I.C. § 18–705. The State also added a persistent violator enhancement, I.C. § 19–2514.

(State's Lodging D-4 at 1-2 (footnote omitted).)

Pursuant to a plea agreement, Petitioner pleaded guilty to felony possession of a controlled substance, and the state dismissed the misdemeanor charges and the sentencing enhancement. (*Id*. at 2.) Petitioner was sentenced to seven years in prison with three years fixed.[2] (*Id*.) The Idaho Court of Appeals affirmed. (State's Lodging B-3.)

Petitioner filed a petition for state post-conviction relief, alleging, in relevant part, that his trial counsel rendered ineffective assistance by failing to file a motion to suppress

---

[2] Petitioner has since been paroled. (*See* Dkt. 23.)

**MEMORANDUM DECISION AND ORDER - 3**

the evidence seized by the officer during the search incident to Petitioner's arrest. The state district court summarily dismissed the petition, and the Idaho Court of Appeals affirmed. (State's Lodging D-4.)

In the instant federal Petition, Petitioner's remaining claims assert that his trial counsel rendered ineffective assistance by failing to file a motion to suppress the evidence found on Petitioner.

## HABEAS CORPUS STANDARD OF LAW

Federal habeas corpus relief may be granted on claims adjudicated on the merits in a state court judgment when the federal court determines that the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Under § 2254(d), as amended by the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal habeas relief is further limited to instances where the state court's adjudication of the petitioner's claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). In determining whether a petitioner is entitled to habeas relief, a federal court reviews the state court's "last reasoned decision," *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991)—here, the decision of the Idaho Court of Appeals on post-conviction review.

**MEMORANDUM DECISION AND ORDER - 4**

When a party contests the state court's legal conclusions, including application of the law to the facts, § 2254(d)(1) governs. That section consists of two alternative tests: the "contrary to" test and the "unreasonable application" test.

Under the first test, a state court's decision is "contrary to" clearly established federal law "if the state court applies a rule different from the governing law set forth in [the Supreme Court's] cases, or if it decides a case differently than [the Supreme Court] [has] done on a set of materially indistinguishable facts." *Bell v. Cone*, 535 U.S. 685, 694 (2002). Under the second test, to satisfy the "unreasonable application" clause of § 2254(d)(1) the petitioner must show that the state court—although identifying "the correct governing legal rule" from Supreme Court precedent—nonetheless "unreasonably applie[d] it to the facts of the particular state prisoner's case." *Williams (Terry) v. Taylor*, 529 U.S. 362, 407 (2000). "Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies [Supreme Court] precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error." *White v. Woodall*, 134 S. Ct. 1697, 1706 (2014) (emphasis omitted).

A federal court cannot grant habeas relief simply because it concludes in its independent judgment that the decision is incorrect or wrong; rather, the state court's application of federal law must be objectively unreasonable to warrant relief. *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003); *Bell*, 535 U.S. at 694. If there is any possibility that fair-minded jurists could disagree on the correctness of the state court's decision, then relief is not warranted under § 2254(d)(1). *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Supreme Court has emphasized that "even a strong case for relief does not

**MEMORANDUM DECISION AND ORDER - 5**

mean the state court's contrary conclusion was unreasonable." *Id*. To be entitled to habeas relief under § 2254(d)(1), "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103.

Though the source of clearly established federal law must come only from the holdings of the United States Supreme Court, circuit precedent may be persuasive authority for determining whether a state court decision is an unreasonable application of Supreme Court precedent. *Duhaime v. Ducharme*, 200 F.3d 597, 600-01 (9th Cir. 2000). However, circuit law may not be used "to refine or sharpen a general principle of Supreme Court jurisprudence into a specific legal rule that th[e] Court has not announced." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1450 (2013).

As to the facts, the United States Supreme Court has clarified "that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). This means that evidence not presented to the state court may not be introduced on federal habeas review if a claim was adjudicated on the merits in state court and if the underlying factual determination of the state court was not unreasonable. *See Murray v. Schriro*, 745 F.3d 984, 999-1000 (9th Cir. 2014).

Two separate statutory subsections govern a federal court's review of state court factual findings. When a petitioner contests the reasonableness of the state court's factual determinations based entirely on the state court record, a federal court must undertake a

**MEMORANDUM DECISION AND ORDER - 6**

§ 2254(d)(2) analysis. *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004). There are two general ways to challenge factual findings as unreasonable under § 2254(d)(2). "First, a petitioner may challenge the substance of the state court's findings and attempt to show that those findings were not supported by substantial evidence in the state court record. Second, a petitioner may challenge the fact-finding process itself on the ground that it was deficient in some material way." *Hibbler v. Benedetti*, 693 F.3d 1140, 1146 (9th Cir. 2012) (internal citations omitted).

To be eligible for relief under § 2254(d)(2), the petitioner must show that the state court decision was based upon factual determinations that were "unreasonable . . . in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). A "state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold.").

Under the second subsection dealing with state court factual findings, 28 U.S.C. § 2254(e)(1), such findings are presumed to be correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. The Ninth Circuit has held that "the presumption of correctness and the clear-and-convincing standard of proof [as set forth in § (e)(1)] only come into play once the state court's fact-findings survive any intrinsic challenge [under § (d)(2)]; they do not apply to a challenge that is governed by

**MEMORANDUM DECISION AND ORDER - 7**

the deference implicit in the 'unreasonable determination' standard of section 2254(d)(2)." *Taylor*, 366 F.3d at 1000.

Despite this distinction in *Taylor v. Maddox*, the relationship between § 2254(d)(2) and § 2254(e)(1) is not entirely clear. *Wood*, 558 U.S. at 300 (declining to address the issue); *Murray*, 745 F.3d at 1001 (noting that the Supreme Court has, in some cases, assumed that § (e)(1) merely qualifies § (d)(2) and that "we too have continued to struggle with the relationship between §§ 2254(d)(2) and (e)(1) when reviewing state-court factual findings under AEDPA"). The uncertainty of that relationship in the Ninth Circuit is amplified a result of the Supreme Court's abrogation of the underpinning of *Taylor*—that a federal could review, under § (e)(1), factual findings of a state court based on evidence not presented to that court even if the claim was adjudicated on the merits. *See Pinholster*, 563 U.S. at 180. However, any differences between § 2254(d)(2) and § 2254(e)(1) are rarely determinative. *See Wood*, 558 U.S. at 304-05 ("Because the resolution of this case does not turn on them, we leave for another day the questions of how and when § 2254(e)(1) applies in challenges to a state court's factual determinations under § 2254(d)(2)."); *Murray*, 745 F.3d at 1001 ("[W]e do not believe the difference between our two lines of cases is determinative in this case, and thus we need not resolve the apparent conflict to decide this case.").

If a petitioner satisfies § 2254(d)—either by showing that the state court's adjudication of the claim was contrary to, or an unreasonable application of Supreme Court law or by establishing that the state court's factual findings were unreasonable— then the federal habeas court must review the petitioner's claim de novo. *Hurles v. Ryan*,

**MEMORANDUM DECISION AND ORDER - 8**

752 F.3d 768, 778 (9th Cir. 2014). De novo review is also required where the state appellate court did not decide a properly-asserted claim or where an adequate excuse for the procedural default of a claim exists. *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002); *Dickens v. Ryan*, 740 F.3d 1302, 1321 (9th Cir. 2014) (en banc).

When considering a habeas claim de novo, a district court may, as in the pre-AEDPA era, draw from both United States Supreme Court and well as circuit precedent, limited only by the non-retroactivity rule of *Teague v. Lane*, 489 U.S. 288 (1989). Even under de novo review, however, if the factual findings of the state court are not unreasonable under § 2254(d)(2), the Court must apply the presumption of correctness found in 28 U.S.C. § 2254(e)(1) to any facts found by the state courts. *Pirtle*, 313 F.3d at 1167-68. Contrarily, if a state court factual determination is unreasonable, the federal court is not limited by § 2254(e)(1) and may consider evidence outside the state court record, except to the extent that § 2254(e)(2) might apply. *Murray*, 745 F.3d at 1000.

## DISCUSSION

For the reasons that follow, Petitioner is not entitled to habeas relief on his claim of ineffective assistance of trial counsel.

1. **Clearly-Established Law**

The Sixth Amendment to the United States Constitution provides that a criminal defendant has a right to the effective assistance of counsel in his defense. The standard for ineffective assistance of counsel claims was identified in *Strickland v. Washington*, 466 U.S. 668 (1984). A petitioner asserting ineffective assistance of counsel must show that (1) "counsel made errors so serious that counsel was not functioning as the 'counsel'

**MEMORANDUM DECISION AND ORDER - 9**

guaranteed the defendant by the Sixth Amendment," and (2) those errors "deprive[d] the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687.

Whether an attorney's performance was deficient is judged against an objective standard of reasonableness. *Id.* at 687-88. A reviewing court's inquiry into the "reasonableness" of counsel's actions must not rely on hindsight:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way.

*Id.* at 689 (internal citations and quotation marks omitted).

Strategic decisions, such as the choice of a defense, "are virtually unchallengeable" if "made after thorough investigation of law and facts relevant to plausible options." *Strickland*, 466 U.S. at 690. Moreover, an attorney who decides not to investigate a potential defense theory is not ineffective so long as the decision to forego investigation is itself objectively reasonable:

**MEMORANDUM DECISION AND ORDER - 10**

> [S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

*Id.* at 690-91. Further, counsel is not deficient in an area where an investigation would not have been fruitful for the defense.

The Ninth Circuit has provided some insight into the *Strickland* standard when evaluating an attorney's "strategy calls." These cases are instructive in the Court's assessment of whether the state court reasonably applied *Strickland*. *Duhaime*, 200 F.3d at 600. First, tactical decisions do not constitute ineffective assistance simply because, in retrospect, better tactics are known to have been available. *Bashor v. Risley*, 730 F.2d 1228, 1241 (9th Cir. 1984). Second, a mere difference of opinion as to tactics does not render counsel's assistance ineffective. *United States v. Mayo*, 646 F.2d 369, 375 (9th Cir. 1981).

If a petitioner shows that counsel's performance was deficient, the next step is the prejudice analysis. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. To satisfy the prejudice standard, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different." *Id*. at 694. As the

*Strickland* Court instructed:

> In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

*Id.* at 695-96. To constitute *Strickland* prejudice, "[t]he likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. 86 at 112.

To show prejudice based on deficient performance of counsel in a case where, as here, the petitioner pleaded guilty, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Further, to demonstrate prejudice when the ineffective assistance claim is based on counsel's failure to file a motion to suppress evidence on Fourth Amendment grounds, the petitioner "must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the [outcome] would have been different absent the excludable evidence." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).

**MEMORANDUM DECISION AND ORDER - 12**

The foregoing standard, giving deference to counsel's decision-making, is the de novo standard of review. Another layer of deference—to the state court decision—is afforded under AEDPA. In giving guidance to district courts reviewing *Strickland* claims on habeas corpus review, the United States Supreme Court explained:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), "an unreasonable application of federal law is different from an incorrect application of federal law." *Williams*, *supra*, at 410, 120 S. Ct. 1495. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Richter*, 562 U.S. at 101. That is, when evaluating a claim of ineffective assistance of counsel in a federal habeas proceeding under § 2254(d), the Court's review of that claim is "doubly deferential." *Pinholster*, 563 U.S. at 190.

Because Petitioner's ineffective assistance claim is based on trial counsel's decision not to file a motion to suppress asserting a violation of the Fourth Amendment, the Court must also consider the standards of law governing Fourth Amendment claims. That amendment, which is applicable to the States through the Fourteenth Amendment, "provides in pertinent part that the 'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated.'" *Soldal v. Cook County*, 506 U.S. 56, 61 (1992) (quoting U.S. Const., amend.

IV). The general rule is that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967) (footnote omitted).

One of these exceptions is a search incident to a lawful arrest. *Arizona v. Gant*, 556 U.S. 332, 338 (2009). This exception "permits law enforcement officers to conduct a warrantless search of a person who is arrested, and of his surrounding area, when the search is incident to the arrest." *United States v. Smith*, 389 F.3d 944, 950-51 (9th Cir.2004) (citing *Chimel v. California*, 395 U.S. 752, 762-63 (1969)). The scope of a lawful search incident to arrest is limited to the arrestee's person and the area within his immediate control, including the area in which he might gain control of a weapon or destructible evidence. *Chimel*, 395 U.S. at 763.

The search-incident-to-arrest exception is justified by "interests in officer safety and evidence preservation that are typically implicated in arrest situations." *Gant*, 556 U.S. at 338. Searches that do not implicate either of these justifications do not trigger the exception and are, therefore, unlawful. *Id.* at 344 (holding unlawful a search conducted after arrestee was handcuffed and locked in back of patrol car, because arrestee posed no threat to officers and was arrested for traffic offense for which no evidence could be found in vehicle).

If an arrest is unlawful, then a search incident to that arrest is also unlawful. *Johnson v. United States*, 333 U.S. 10, 15-17 (1948). To be lawful, an arrest must be supported by probable cause. *Michigan v. Summers*, 452 U.S. 692, 700 (1981). Probable

**MEMORANDUM DECISION AND ORDER - 14**

cause exists where the "facts and circumstances [are] sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." *Gerstein v. Pugh*, 420 U.S. 103, 111 (1975).

The protections of the Fourth Amendment extend to brief investigatory stops of persons that fall short of traditional arrest. *Terry v. Ohio*, 392 U.S. 1, 9 (1968). Where justification for an investigatory stop is in question, "the Fourth Amendment is satisfied if the officer's action is supported by reasonable suspicion to believe criminal activity may be afoot." *United States v. Sokolow*, 490 U.S. 1, 7 (1989).

"Reasonable suspicion is formed by specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity." *United States v. Miguel*, 368 F.3d 1150, 1153 (9th Cir. 2004) (internal quotation marks omitted), *overruled on other grounds by United States v. Gasca-Ruiz*, 852 F.3d 1167 (9th Cir. 2017) (en banc). An investigatory stop based on reasonable suspicion satisfies the Constitution even if that reasonable suspicion is based on an officer's good-faith mistake of fact. *Id*. at 1153-54.

2. **State Court Decision**

The Idaho Court of Appeals appropriately cited *Strickland v. Washington* as the governing law with respect to ineffective assistance of counsel claims. (State's Lodging D-4 at 6.) The court then rejected Petitioner's *Strickland* claim because (1) the initial stop of Petitioner was supported by reasonable suspicion, (2) the arrest was supported by probable cause, and therefore (3) the search incident to the arrest was lawful. As a result, any motion to suppress the evidence obtained in that search would have been denied:

**MEMORANDUM DECISION AND ORDER - 15**

Brummett asserts that a motion to suppress would have been successful because his flight, without more, could not justify the stop, and "[t]here was no behavior that indicated any sort of criminal activity." Specifically, Brummett argues he was not trespassing because he did not see any no trespassing signs, and he was able to find an opening in the fence. However, for purposes of establishing reasonable suspicion and probable cause, whether Brummett knew he was trespassing is irrelevant. An investigative detention is permissible if it is based upon specific articulable facts which justify suspicion that the detained person is, has been, or is about to be engaged in criminal activity. *State v. Sheldon*, 139 Idaho 980, 983, 88 P.3d 1220, 1223 (Ct. App. 2003). The justification for an investigative detention is evaluated upon the totality of the circumstances then known to the officer. *United States v. Cortez*, 449 U.S. 411, 418 (1981); State v. Rawlings, 121 Idaho 930, 932, 829 P.2d 520, 522 (1992). The information available to the detaining officers must show a "particularized and objective basis for suspecting the particular person stopped of criminal activity." *Cortez*, 449 U.S. at 417–18. *See also Florida v. Royer*, 460 U.S. 491, 498 (1983); *State v. Salato*, 137 Idaho 260, 264, 47 P.3d 763, 767 (Ct. App. 2001). Thus, reasonable suspicion and probable cause is dependent upon the information possessed by the officer, not the information possessed by the defendant. *See Sheldon*, 139 Idaho at 983, 88 P.3d at 1223.

At the time the officer seized Brummett, the officer had reasonable suspicion that Brummett was trespassing and that he had committed the crime of resisting and obstructing an officer. First, the officer testified that he observed Brummett walking on railroad tracks that were protected by a chain link, barbed wire fence that was labeled no trespassing. Thus, the officer had ample basis to reasonably believe that Brummett was trespassing. Furthermore, Brummett repeatedly ignored the officer's instructions to approach the officer and to walk to the overpass where he could climb the fence and then proceeded to run from the officer when the officer climbed the fence. Therefore, the officer reasonably believed that Brummett willfully resisted, delayed, and obstructed him in the attempted discharge of his duty. *See State v. Quimby*, 122 Idaho 389, 391, 834 P.2d 906, 908 (Ct. App. 1992) (defendant's flight from police can provide

> additional basis for probable cause to arrest for resisting and obstructing). Contrary to Brummett's contention, the district court did not consider his flight, without more, when finding that his stop was justified. The officer had reasonable suspicion that Brummett was committing criminal activity based on the totality of the circumstances, which included trespassing, refusing to follow the officer's instruction, and fleeing from the officer. Accordingly, the district court correctly determined that the officer had reasonable suspicion that Brummett was engaged in criminal activity at the time he was seized, and probable cause to arrest for resisting and obstructing. Therefore, the subsequent search was lawful, and Brummett has failed to demonstrate that his attorney was ineffective for failing to file a motion to suppress.

(*Id*. at 7-8.)

### 3. Petitioner Is Not Entitled to Habeas Relief on Claim 2 or the Related Portion of Claim 3

The Idaho Court of Appeals' decision that a motion to suppress would have been denied was objectively reasonable. The specific, articulable facts supporting reasonable suspicion for the officer's initial attempt to speak to Petitioner include (1) the existence of a chain-link and barbed-wire fence containing the railroad tracks and (2) a no trespassing sign. Even if, as the arresting officer testified during Petitioner's preliminary hearing, the sign was near the tracks on the east side of the street, whereas Petitioner was walking on the tracks on the west side of the street, that fact does not eliminate reasonable suspicion. (See State's Lodging C-2 at 172.) It was reasonable for the officer to infer, from the chain-link, barbed-wire fence, that the railroad tracks where Petitioner was walking were—like the tracks on the other side of the street—on private property and that Petitioner was engaged in the crime of trespassing. Therefore, the Idaho Court of Appeals correctly held that reasonable suspicion justified the officer's initial actions.

**MEMORANDUM DECISION AND ORDER - 17**

Given that the officer had reasonable suspicion of criminal activity, once Petitioner fled from the officer, the officer had additional reason to believe that Petitioner was engaged not only in the crime of trespass, but also the crime of obstructing a police officer. *See Gerstein*, 420 U.S. at 111. The state court's conclusion that the facts known to the officer constituted probable cause was reasonable. And because the arrest was lawful, the search incident to the arrest was also lawful. Trial counsel reasonably decided not to file a motion to suppress (and there was no prejudice in any event) because the motion would have been denied.

The double deference that applies when reviewing ineffective assistance claims in habeas proceedings leaves no room for this Court to second-guess the decision of the Idaho Court of Appeals. *See Pinholster*, 131 S. Ct. at 1403. Petitioner simply has not shown that his counsel performed deficiently in failing to file a motion to suppress or that Petitioner's Fourth Amendment claim was meritorious such that counsel's decision prejudiced Petitioner. *See Kimmelman*, 477 U.S. at 375.

Therefore, the remaining claims in the Petition shall be denied.

## ORDER

**IT IS ORDERED:**

1. The remaining claims in the Petition for Writ of Habeas Corpus (Dkt. 3) are DENIED, and this entire action is DISMISSED with prejudice.

2. The Court does not find its resolution of this habeas matter to be reasonably debatable, and a certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c); Rule 11 of the Rules Governing Section 2254 Cases. If

Petitioner wishes to appeal, he must file a timely notice of appeal with the Clerk of Court. Petitioner may seek a certificate of appealability from the Ninth Circuit by filing a request in that court.

DATED: **May 11, 2017**

Honorable Candy W. Dale
United States Magistrate Judge